# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **CYNTHIA ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 10-2022 |
| | ) | |
| **THE CATO CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Cynthia Anderson initiated this lawsuit against her former employer, The Cato Corporation, alleging that Cato fired her for discriminatory reasons based on her pregnancy.[1] Cato has filed a motion for summary judgment (doc. 44), asserting that Ms. Anderson was terminated because she needed three weeks of leave, to which she was not entitled under the company's leave policy. For the reasons set forth below, Cato's motion for summary judgment is granted.

**1.     Statement of Material Facts**[2]

---

[1] Ms. Anderson's complaint also included a claim that Cato failed to accommodate her pregnancy-related condition in retaliation for her complaints about discrimination. According to the Pretrial Order, however, Ms. Anderson has agreed to dismiss that claim with prejudice.

[2] Consistent with the well-established standard for evaluating a motion for
(continued...)

Under Cato's Personal Leave of Absence policy, part-time associates are not eligible for personal leave. Ms. Anderson was hired as a part-time sales associate at Cato's Leavenworth, Kansas store in February 2008. Ms. Anderson learned she was pregnant in April 2008, and due to extreme morning sickness, her doctor wrote a note on his script pad for "Bed rest x 3 weeks."

Upon learning that Ms. Anderson would need three weeks off from work, Store Manager Colleen May called the District Manager Cynthia Canada to discuss the situation. As the District Manager, Ms. Canada made the decision to terminate Ms. Anderson. Ms. Canada testified that she terminated Ms. Anderson because, as a part-time employee, Ms. Anderson was not eligible for the leave she needed.

The official termination notice was signed by Ms. May, the Store Manager, and dated April 29, 2008. According to that document, the effective date of Ms. Anderson's termination was April 21, 2008, the day the store received her doctor's note. To explain the reason for the termination, Ms. May checked the box marked "Not Eligible for Leave of Absence/FMLA," and in the Explanation section, she wrote "having complications with pregnancy. Will return to be rehired in a few weeks." Ms. May testified that employees terminated due to lack of leave can be rehired if they apply at another time; she understood that Ms. Anderson could return to work after she was feeling better.

---

²(...continued)
summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party. *See, e.g.*, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

Sometime after the end of Ms. Anderson's employment with Cato, she asked Ms. May to provide her a note showing that she was no longer employed so that she could apply for public assistance benefits. Ms. Anderson told Ms. May what to write: "[Cato Corporation] terminated [Ms. Anderson's] employment on 04/11/2008[3] due to complications with her pregnancy resulting in bed rest."

Ms. Anderson also asked the First Assistant Store Manager Kassie Bechtold for a similar letter to assist her in obtaining unemployment benefits. Her letter read:

> [Ms. Anderson] was terminated due to pregnancy related illnesses. Cynthia needed off three weeks for bed rest required by a doctor. However, according to the Cato policy a part time sale associate has to be release [sic] if she/he needs off for longer than seven days unless she/he has been employed for 365 days. Cynthia did not apply to the guidelines; therefore she was forced to be terminated.

Ms. Anderson asked Ms. Bechtold to write the beginning part, that she was terminated as a result of her pregnancy, and Ms. Bechtold thought she should add something to explain that Ms. Anderson was not eligible for the leave she needed.[4]

In January 2010, Ms. Anderson filed this lawsuit seeking compensatory and punitive damages for the allegedly discriminatory treatment she received from Cato.

**2. Standard of Review**

---

[3] Although the official termination notice indicates that Ms. Anderson was terminated as of April 21, 2008, Ms. May testified that she put April 11, 2008, the last day Ms. Anderson physically worked at the store, in this letter at Ms. Anderson's request.

[4] Ms. Bechtold testified that she later realized that she had misstated the details of the leave policy. In fact, part-time associates are not eligible for leave at all.

3

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler*, 144 F.3d at 670). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

4

*Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**3.     Discussion**

Ms. Anderson's claim is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act. In 1978, the Pregnancy Discrimination Act added section (k) to the definition section of Title VII. It states that the term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The section further provides that women affected by "pregnancy, childbirth or related medical conditions shall be treated

5

the same for all employment-related purposes, including receipt of benefits." *Id.* The amendment was added to Title VII to prevent differential treatment of women based on the condition of pregnancy. *EEOC v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir. 1992). It requires that an employer treat an employee who is temporarily unable to do her job because of a pregnancy-related condition in the same manner as the employer treats other temporarily disabled employees. 29 C.F.R. § 1604 app.

Claims brought under the Pregnancy Discrimination Act's addition to Title VII are analyzed in the same way as other Title VII claims of disparate treatment. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000) (citing *Ackerman*, 956 F.2d at 947). To prevail under Title VII, a plaintiff must show, through direct or indirect evidence, that the discrimination complained of was intentional. *Id.* (citing *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).

A. Direct Evidence

A plaintiff may establish discrimination directly. "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Shorter*, 188 F.3d at 1207 (quoting Black's Law Dictionary 460 (6th ed. 1990)) (overruled in part on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). It is evidence from which a factfinder may conclude, without inference, that the employment action was taken because of the employee's protected status. *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (citing *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007)).

6

Statements made by an employer that show discriminatory motivation for its acts may constitute direct evidence. *See, e.g., Lambert v. Travel Ctrs. of Am.*, 2009 WL 3838780, at *7 (D. Colo. Nov. 16, 2009) (supervisor's statement that plaintiff "couldn't work [here] while [she] was pregnant"); *Olsen v. Allsups Convenience Store, Inc.*, 2005 WL 2372154, at *1-2 (W.D. Okla. Sept. 27, 2005) (manager's statement that "pregnant women could not work [here]" and that he understood the store to have a policy against hiring or keeping pregnant women employed); *White v. Hammer Constr., Inc.*, 2005 WL 1606450, at *5 (W.D. Okla. July 5, 2005) (supervisor's statement that "due to [plaintiff's] pregnancy, [her] doctor's appointments and not being able to be there as much as the other girls that [plaintiff] couldn't perform [her] job duty and that they would have to let [her] go"); *Simmons v. Kan. City Psychiatric Group, P.A.*, 2004 WL 2810104, at *5 (D. Kan. Dec. 7, 2004) (supervisor's statement that "at this point we're calling it quits, your pregnancy is stressing us out").

In contrast, statements that merely express personal opinion or bias do not constitute direct evidence of discrimination. *Heim v. Utah*, 8 F.3d 1541, 1546-47 (10th Cir. 1993) (manager's remark that "I hate having fucking women in the office); *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) (director's "feelings about women being better suited to some jobs than others").

In her opposition to Cato's summary judgment motion, Ms. Anderson asserts that she has direct evidence of discrimination. Specifically, she identifies the letters written by Ms. May and Ms. Bechtold, each indicating that Ms. Anderson was terminated for a

7

pregnancy-related illness. For two key reasons, however, the court disagrees with Ms. Anderson's characterization of these letters as direct evidence of discrimination.

First, read in their entirety, the letters make it clear that Ms. Anderson was terminated because she needed leave to which she was not entitled. Ms. May's letter mentions that Ms. Anderson's pregnancy resulted in bed rest. And Ms. Bechtold's letter notes explicitly that Ms. Anderson needed three weeks off from work for bed rest, but that she was not entitled to such leave. Thus the letters do not provide direct evidence, with no inference required, that Ms. Anderson was terminated merely because she was pregnant. *See, e.g.*, *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 855 (10th Cir. 2007) ("A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." (quotation marks and citation omitted)).

Moreover, both Ms. May and Ms. Bechtold testified that Ms. Anderson told them what to write, and so these letters do not reflect Cato's motivation behind its decision to termination Ms. Anderson. Ms. May testified, when asked if she wrote that Ms. Anderson was terminated "due to complications with her pregnancy resulting in bed rest," that she "wrote what Cynthia Anderson told me to write." (May Dep. 145.) Similarly, Ms. Bechtold testified that Ms. Anderson "needed me to put on [the letter] that [her termination] was because of her pregnancy." (Bechtold Dep. 119.) Although Ms. Anderson asserted in her opposition to summary judgment that "[t]here is no evidence that [she] specifically told them what to put in the letters" (Doc. 48 at 31), she did not

8

dispute those statements of fact (*id.* at 14-15). Nor did she identify any evidence in the record that would contradict Ms. May's or Ms. Bechtold's testimony. Thus, given that the letters appear to be Ms. Anderson's words and not an official statement from her employer, they do not provide direct evidence of any illegal animus on the part of Cato.

Thus, Ms. Anderson has not presented direct evidence of discrimination.

B. Indirect Evidence

Lacking direct evidence, a plaintiff can rely on the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to demonstrate intentional discrimination. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999). Under the *McDonnell Douglas* methodology, a plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210-11 (10th Cir. 2010). By establishing a prima facie case, the plaintiff raises a rebuttable presumption that the defendant unlawfully discriminated against her. *Horizon/CMS*, 220 F.3d at 1191. The burden of production then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. *Johnson*, 495 F.3d at 1211. If the defendant is able to articulate a facially nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff, who can avoid summary judgment only by showing that her "pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext." *Horizon/CMS*, 220 F.3d at

9

1191 (quoting *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148-49 (10th Cir. 1999)).

Assuming without deciding for the purposes of the summary judgment analysis that Ms. Anderson can satisfy a prima facie case for pregnancy discrimination,[5] the court looks to Cato's proffered reason for terminating Ms. Anderson. *See, e.g.*, *Shorter*, 188 F.3d at 1208. Cato contends that Ms. Anderson was terminated because she needed a leave of absence but, as a part-time employee, she was not entitled to leave under the company's leave policy.[6] Thus Cato has articulated a non-discriminatory reason for terminating Ms. Anderson. *See, e.g.*, *Piraino v. Int'l Orientation Res., Inc.*, 137 F.3d 987, 991 (7th Cir. 1998) ("The terms of the policy itself also do not suggest intentional discrimination. The policy is facially neutral; it draws no distinction between pregnant and nonpregnant persons for leave eligibility."),

The burden now shifts to Ms. Anderson to demonstrate that the proffered reason for her termination was a mere pretext for discrimination. *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (quotations and citations omitted). Thus, in order

---

[5] Ms. Anderson's complaint alleges discrimination based on her termination. In the pretrial order, however, the parties identified additional theories of recovery, including that Cato discriminated against Ms. Anderson by sending her home against her will in light of her pregnancy-related illnesses and that Cato failed to promote her because of her pregnancy. Cato's summary judgment motion addresses all three theories of recovery; Ms. Anderson's reply brief, however, addresses only her termination claim, and so she has waived the other theories. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1176 n.20 (10th Cir. 2010).

[6] Cato's Field Policy and Procedure concerning Personal Leave of Absence states that "Part-time and temporary Associates are <u>not</u> eligible for this type of leave." (Doc. 45 Ex. J (emphasis in original).)

to survive summary judgment, Ms. Anderson must produce "evidence from which a reasonable jury could believe that the defendant's proffered reason is a false one." *Conner*, 121 F.3d at 1396. "A plaintiff establishes pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Horizon/CMS*, 220 F.3d at 1198 (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317 (10th Cir. 1999) (overruled on other grounds by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002))). "Evidence sufficient to raise a genuine question whether an employer's proffered explanation is pretextual may 'take a variety of forms.'" *Horizon/CMS*, 220 F.3d at 1198 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978)). A plaintiff may, for example, demonstrate that an employer's reasons for the actions taken are pretextual by demonstrating that similarly-situated individuals, not part of plaintiff's group, were treated differently. *Ackerman*, 956 F.2d at 947-48; *see also Shafnisky v. Bell Atl., Inc.*, No. 01-3044, 2002 WL 31513551, at *6 (E.D. Pa. Nov. 5, 2002) ("In the absence of evidence that [a leave policy] has been applied in an inconsistent or discriminatory manner, the application of such a medical leave policy to terminate an employee after an extended absence from work is a legitimate reason for the employment action.").

Ms. Anderson makes several arguments to support her claim of pretext. First, she relies on the letters written by Ms. May and Ms. Bechtold. But for the reasons noted above, those letters would not allow a reasonable factfinder to discredit Cato's proffered

11

reason for the termination. Moreover, the mere fact that the need for leave was caused by pregnancy is insufficient to establish pretext. *See, e.g.*, *Persky v. Dolgencorp., Inc.*, No. 07-136-C, 2008 WL 542959, at *4 (W.D. Okla. Feb. 25, 2008) (finding no pretext when supervisor's comments focused on the how plaintiff's lift restrictions precluded her from performing her job, despite the fact that the lift restrictions were due to plaintiff's pregnancy).

Ms. Anderson also argues pretext based on a conversation she had with Ms. May prior to being terminated. Ms. Anderson was at work on April 11 and was sick, leaving the sales floor occasionally to go vomit in the bathroom. Ms. May told her that "[i]f she needed to leave . . . there wasn't going to be any type of punishment for it." (May Dep. 183.) Ms. Anderson argues that she was thus "compelled to take time off with the promise that she would not be punished at work when in fact she received the ultimate punishment of being fired." (Doc. 48 at 31-32.)

Ms. May's assurance that Ms. Anderson could leave work without punishment when she was ill does not establish that Cato's leave policy was pretext for discrimination. Ms. May's statements related to the particular day in question. And Cato has consistently maintained that Ms. Anderson was not fired for absenteeism, but rather because she later needed three weeks of leave, to which she was not entitled.

Finally, Ms. Anderson suggests that an employee who was not pregnant was

12

treated more favorably and was allowed leave from work when she was sick.[7] Ms. Anderson cites to Ms. Bechtold's deposition testimony about Nichole Goff who was sick at work, had H1N1 flu, and submitted a doctor's note that she needed three or four days off from work. (Bechtold Dep. 50-51.) Ms. Bechtold testified that Ms. Goff was given the requested leave and that, as of the date of the deposition, she was still employed by Cato. Ms. Anderson's reliance on this event, however, fails to address one key difference between she and Ms. Goff: Ms. Goff was a full-time employee and was eligible for the kind of personal leave she requested. Thus, Cato's different treatment of her is not evidence of pretext.

Lacking any evidence of pretext, Ms. Anderson cannot satisfy her burden under the *McDonnell-Douglas* paradigm. Summary judgment in favor of Cato is thus appropriate.

**4.      Exhibit G**

In her response to Cato's summary judgment motion, Ms. Anderson asks that the court strike Exhibit G from Cato's motion, arguing that the documents contained therein constitute inadmissible hearsay. Exhibit G consists of Kansas Health Policy Authority documents concerning Ms. Anderson, accompanied by an affidavit from the custodian of the records.

---

[7] Ms. Anderson makes this argument in the context of her prima facie case and not in her discussion of pretext. But because different treatment of similarly-situated individuals can establish pretext, *see Ackerman*, 956 F.2d at 947-48, the court will address it here.

13

The court did not consider Exhibit G in evaluating the summary judgment motion. Because these documents have no bearing on the outcome of the case, the court need not reach the issues raised by Ms. Anderson's request.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (doc. 44) is **granted** and judgment is entered in favor of defendant on Count I.

**IT IS FURTHER ORDERED** that, consistent with the pretrial order, Count II is **dismissed** with prejudice.

**IT IS SO ORDERED** this 1st day of December, 2010.

>s/ John W. Lungstrum
>John W. Lungstrum
>United States District Judge